```
          IN THE UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| FRANCES ROGERS, | HON. JEROME B. SIMANDLE |
| Plaintiffs, | Civil No. 12-7910 (JBS/KMW) |
| v. | |
| BRAD A. MORRICE, et al., | **MEMORANDUM OPINION** |
| Defendants. | |

**SIMANDLE**, Chief Judge:

    Plaintiff Frances Rogers, representing herself and proceeding in forma pauperis, alleges that Plaintiff and her late husband, Thomas Rogers, were victims of fraud related to a foreclosure on their New Jersey residence. (Compl. ¶ 1.) Plaintiff moves to amend her Complaint [Docket Item 9], even though the Court has not completed screening Plaintiff's Complaint as required by 28 U.S.C. § 1915(e). For the reasons explained below, the motion will be granted and the Court will screen the Amended Complaint. The Court finds as follows:

    1. On January 28, 2013, the Court granted Plaintiff's petition to proceed in forma pauperis but ordered Plaintiff to refile her Complaint in accordance with the "short and plain statement" requirement of Fed. R. Civ. P. 8(a), because Plaintiff's original Complaint was more than 400 pages long, inclusive of exhibits. [Docket Item 6 at 1-4.] At the same time,

the Court dismissed three counts (theft, manslaughter and "Aiding and Abetting") because those counts referenced parts of New Jersey's criminal code that did not provide for civil remedies. [Id.]

2. Plaintiff refiled her Complaint [Docket Item 8]. Less than a week later, before the Court had screened the Complaint pursuant to § 1915(e), Plaintiff filed this motion to amend. [Docket Item 9.] At present, none of the Defendants have been served with process in this matter.

3. The Amended Complaint is half the length of the original Complaint, but is still voluminous. Plaintiff's Amended Complaint is more than 100 pages and Plaintiff has attached nearly 300 individual exhibits, including some that are more than 100 pages each. While bringing a motion to amend at this juncture is procedurally unusual, the Court will grant the motion to amend and the latest Amended Complaint [Docket Item 9] will be treated as the pleading for screening purposes. The Court will proceed to screen the Amended Complaint.

4. Suits brought in forma pauperis are governed by 28 U.S.C. § 1915, even if the party bringing suit is not a prisoner. See Schneider v. Legal Servs. Corp., No. 08-5981, 2011 WL 53177 (D.N.J. Jan. 7, 2011) (applying § 1915(e)(2) to a case not brought by a prisoner, citing Grayson v. Mayview State Hosp., 293 F.3d 103, 109-10 (3d Cir. 2002)); Brooks v. Cent. Dauphin Sch.

Dist., No. 09-2482, 2010 WL 771627, at *4 (M.D. Pa. Feb. 26, 2010) ("§ 1915(e)(2) applies to all in forma pauperis complaints, and not just to prisoners"). Section 1915(e)(2)(B) requires the court to dismiss the case, or any portion thereof, if the action "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." At the same time, "[w]here the plaintiff is a pro se litigant, the court has an obligation to construe the complaint liberally." Giles v. Kearney, 571 F.3d 318, 322 (3d Cir. 2009).

   5. The Court has jurisdiction in this case under 28 U.S.C. § 1331, as Plaintiff brings claims under federal law and alleges violations of her constitutional civil rights, and under 18 U.S.C. § 1964(c), which confers federal jurisdiction for civil RICO ("racketeer influenced and corrupt organizations") claims. The Court has supplemental jurisdiction over state-law claims pursuant to 28 U.S.C. § 1367(a). Venue is proper in this District because the residential property at issue is located in Willingboro, New Jersey, and much of the relevant conduct occurred while Plaintiff was a resident of Burlington County, which is within this Court's vicinage.

   6. Briefly, the facts of the case are this. Plaintiff and her late husband, Thomas Rogers, bought a home in Willingboro, N.J., with a fixed-rate mortgage that they refinanced three times

3

with adjustable rate mortgages. (Am. Compl. ¶¶ 54-57.) Plaintiff and her husband believed they qualified for a loan modification, and repeatedly requested a modification but had tremendous difficulty communicating with Defendant Litton Loan Servicing, LP, which, by that time, was servicing the loan. (Id. ¶¶ 82-83.) Eventually, Plaintiff and her husband could not make their monthly payments. (Id. ¶ 101.) Plaintiff and her husband, and later, Plaintiff alone, continued to fight for a loan modification, and Litton employees continued to request documents that Plaintiff asserts she already provided to Litton, stalling any progress toward a decision on modification. (Id. ¶ 105.) Plaintiff places great emphasis in the Amended Complaint on the fact that "their property was never assigned to GSAMP Trust 2007 - NC1 within 90 days after the February 1, 2007 cut-off date," however the significance of this fact is unclear from Plaintiff's pleading. (Id. ¶ 106.) Eventually, Plaintiff received a letter from Litton indicating the rate on her mortgage was 7.05 percent, but Plaintiff maintains that the rate and the stated amount due was incorrect and concludes that "this figure is fraud" and that Litton committed "fraudulent breach of the terms within the note, along with the manipulation and fraudulent concealment of the interest rate by Litton . . . ." (Id. ¶ 122.) Foreclosure proceedings were initiated, but Plaintiff "decided to enter a short sale agreement with Litton" and moved to Texas to live with

4

her daughter. (Id. ¶ 143.) Plaintiff asserts that the foreclosure proceedings were fraudulent. (Id. ¶ 135.) Plaintiff also asserts that she made payments toward the mortgage that were never credited to her account and that Litton agreed to accept some payments but refused others. (Id. ¶¶ 131-32.) Plaintiff also describes a long struggle with Litton to receive an insurance check issued for Plaintiff's benefit for damage on the property. (Id. ¶¶ 142-68.) Plaintiff spends a tremendous amount of her brief describing the general mortgage and foreclosure crisis and several related lawsuits and legislative reports on the topic.

    6. The Court now turns to the specific Counts alleged. Defendant Brad A. Morrice must be terminated from this action because Plaintiff sues Mr. Morrice "in his official capacity as CEO and co-founder of the defunct New Century Financial Corporation, a corporation chartered in California." (Am. Compl. ¶ 11.) Plaintiff took out her original mortgage on the property with Mr. Morrice's company (id. ¶ 54), however, Plaintiff does not plead that Mr. Morrice participated in, or directed others to commit, any alleged fraud or other wrongdoing. Plaintiff pleads no facts that raise a plausible inference that Mr. Morrice's personal conduct could ground liability in these circumstances, given the legal protections afforded to officers of corporations. Corporate officers "do not incur personal liability for torts of the corporation merely by reason of their official position,

unless they participate in the wrong or authorize or direct that it be done." <u>PMC, Inc. v. Kadisha</u>, 93 Cal. Rptr. 2d 663, 670 (Cal. Ct. App. 2000); <u>see</u> <u>also</u> <u>Wiater Bldg. & Design, Inc. v. Gutierrez</u>, No. L-2374-06, 2013 WL 28090, at *8 (N.J. Super. Ct. App. Div. Jan. 3, 2013) (stating that a corporate officer incurs liability when he or she commits a tort or directs a tortious act to be done "or participates or cooperates therein"). Without factual allegations about Defendant Morrice's personal conduct, all claims against him must be dismissed.

    7. All state-law claims against Phelan Hallinan & Schmeig, PC, and Phelan Hallinan & Schmeig, LLP, as well as the Phelan attorneys and employees must be dismissed because (1) the New Jersey litigation privilege applies and (2) Plaintiff cannot challenge the validity of assignments transferring Plaintiff's mortgages from one holder to another. The only allegations against the Phelan attorneys involved in the foreclosure -- Defendants Rosemarie Diamond, Brian Yoder, Brian Blake, Thomas M. Brodowski, Vladimir Palma, and Sharon L. McMahon -- are that they "filed a fraudulent foreclosure complaint with the Office of the Clerk of the Superior Court of New Jersey on behalf of BANA as Trustee of GSAMP Trust 2007-NC1." (Am. Compl. ¶¶ 108, 134.) Plaintiff alleges that the above-named Phelan attorneys "served [Plaintiff] with a motion to foreclose on her New Jersey residential property . . . ." (<u>Id.</u> ¶ 134.) The New Jersey

litigation privilege ensures that statements made by attorneys and their representatives "made in the course of judicial or quasi-judicial proceedings are absolutely privileged and immune from liability." Giles v. Phelan Hallinan & Schmieg, LLP, No. 11-6239, 2012 WL 4506294, at *12 (D.N.J. Sept. 28, 2012) (quoting Peterson v. Ballard, 679 A.2d 657, 659 (N.J. Super. Ct. App. Div. 1996) and citing Erickson v. Marsh & McLennan Co., Inc., 569 A.2d 793 (N.J. 1990)); . This immunity extends to "statements made by attorneys outside the courtroom, such as in attorney interviews and settlement negotiations." Loigman v. Twp. Comm. of Twp. of Middletown, 889 A.2d 426, 433 (N.J. 2006); see also Giles, 2012 WL 4506294, at *12. New Jersey courts "have not applied a fraud exception to the litigation privilege . . . ." Giles, 2012 WL 4506294, at *15. The only allegedly wrongful conduct by these Defendants is the allegedly fraudulent filing related to foreclosure proceedings in New Jersey Superior Court; therefore, the litigation privilege applies, at least as to all state-law claims against these defendants.[1]

    8. The New Jersey litigation privilege also bars Plaintiff's Count Twenty-One ("Fraud Upon the Court"), which must be dismissed. Whatever duties Defendants owed to the court do not

---

[1] This Court, in Giles declined to address whether the litigation privilege bars federal RICO claims against these Defendants. Giles, 2012 WL 4506294, at *15. The Court declines to decide this issue as part of the § 1915 screening.

give rise to a private right of action by another party.

9. The only other specific allegations of wrongdoing against the Phelan law firms, attorneys or employees are against Defendants Judith T. Romano and Eugene Jaskiewicz, both Phelan employees, or unnamed employees.[2] Plaintiff alleges that Defendant Romano "civil aided and abetted the fraudulent concealment by executing the assignment of complainant's mortgage note to the trust," which was recorded in the Burlington County Clerk's office on July 29, 2009. (Am. Compl. ¶¶ 107, 129, 134, 139.) Plaintiff asserts that Defendant Jaskiewicz was "the notary who attested to this mortgage assignment . . . ." (Id. ¶¶ 107, 129.) To the extent Plaintiff seeks to challenge the assignment as fraudulent, Third Circuit case law bars such a claim. See Giles, 2012 WL 4506294, at *20 ("Plaintiffs may not, therefore, challenge any assignments to which they were not a party"); Ifert v. Miller, 138 B.R. 159, 163, 166 (E.D. Pa. 1992), aff'd, 981 F.2d 1247 (3d Cir. 1992).

9. The Court detects no specific factual allegations against Defendants Lawrence Phelan, Francis Hallinan or Daniel Schmeig. Therefore, all claims against these defendants will be dismissed and they shall be terminated from the action.

---

[2] Plaintiff asserts, for instance, that the law firm sent her correspondence demanding payment, and Plaintiff asserts that "PHS falsely declared [Defendant] Litton as the "Noteholder" and the "lender" despite BANA being proclaimed the "Noteholder" and Litton the "servicer[.]" (Am. Compl. ¶¶ 138-39.)

10. Count Six of the Amended Complaint ("Common Law Gross Reckless Manslaughter") must be dismissed because it is facially time-barred. Throughout the Amended Complaint, Plaintiff alleges that Defendants' conduct contributed to the death of her husband, Thomas Rogers, who "succumbed to his battle with cancer" on June 30, 2009. (Am. Compl. ¶ 108.) The Court construes Count Six to be a claim for wrongful death, and under N.J. Stat. Ann. § 2A:31-3, any action for death by wrongful act "shall be commenced within 2 years after the death of the decedent . . . ." Thomas Rogers died in 2009, and Plaintiff did not bring this action until December 28, 2012. Therefore, any claim for wrongful death is barred by the state statute of limitations and must be dismissed.

11. Count Nine of the Amended Complaint must be dismissed ("Joint Enterprise Against all Defendants, Actionable Pursuant to Common Law"), because the Court knows of no independent cause of action "Joint Enterprise" cognizable under New Jersey law. The Court construes Count Nine to allege some kind of civil conspiracy, that the Defendants joined together to perpetrate an alleged fraud on Plaintiff: "Plaintiff alleges and believes the Defendants are operating a joint enterprise . . . ." (Am. Compl. ¶ 216.) However, such a claim would be duplicative of either Count Four ("Civil Aiding and Abetting") which is a cause of

action recognized in New Jersey,[3] or Count Eight ("Civil Conspiracy to Defraud"). Therefore, Count Nine will be dismissed.

12. To the extent Plaintiff brings Counts Fourteen ("Deprivation of Property - Unlawful Seizure - Malicious Foreclosure Prosecution") and Fifteen ("Conspiracy to interfere with civil rights") under 42 U.S.C. § 1983, those claims must be dismissed because Plaintiff does not allege that her rights were violated by persons acting under color of state law, that is, by state actors. All of the Defendants here are private actors, and Plaintiff has pleaded no facts from which inferences may reasonably be drawn to suggest that these private individuals or corporations were acting under color of state law. See Benn v. Universal Health Sys., Inc., 371 F.3d 165, 169-70 (3d Cir. 2004) ("To establish a claim under § 1983, [the plaintiff] must show that the defendants . . . were state actors . . . ."). Because courts "consistently look[] to federal § 1983 jurisprudence for guidance" when interpreting the New Jersey Civil Rights Act, N.J. Stat. Ann. § 10:6-1, et seq. ("NJCRA"),[4] and to the extent Counts Fourteen and Fifteen allege a violation of the NJCRA, those

---

[3] See Bondi v. Citigroup, Inc., No. L-10902-04, 2005 WL 975856, at *17 (N.J. Super Ct. Law Div. Feb. 28, 2005) (stating that courts in this circuit and in New Jersey recognize "civil aiding and abetting liability" as described in the Restatement (Second) of Torts § 876(b)).

[4] See Gonzalez v. Auto Mall 46, Inc., Nos. L-2412-09 & L-216-10, 2012 WL 2505733, at *4 (July 2, 2012).

claims must fail because Plaintiff does not plead state action. See also Trafton v. City of Woodbury, 799 F. Supp. 2d 417, 443 (D.N.J. 2011) ("This district has repeatedly interpreted NJCRA analogously to § 1983"). Furthermore, because Count Sixteen alleges violations of the NJCRA as well, for the foregoing reasons Count Sixteen must be dismissed.

    13. To the extent Plaintiff attempts to bring a Bivens action in Count Fourteen ("Implied Cause of Action pursuant to Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971)"), the claim must be dismissed because the Bivens doctrine recognizes "an implied private right of action for damages against federal officials," Bistrian v. Levi, 696 F.3d 352, 365 (3d Cir. 2012), and Plaintiff does not name any federal officials as Defendants. Counts Fourteen and Fifteen, then, may only survive if they state a claim under 42 U.S.C. § 1985.

    14. The Court construes Count Fifteen to allege a conspiracy to interfere with Plaintiff's federally protected civil rights under 42 U.S.C. § 1985(3), based on racial animus.[5] Plaintiff does not state which of her federal rights Defendants have violated, but she does assert that she "is an African American

---

[5] Guiding the Court's interpretation is the fact that actions alleging conspiracies motivated by economic or commercial animus are not actionable under § 1985(3), United Bhd. of Carpenters, Local 610 v. Scott, 463 U.S. 825, 838 (1983), and the young and elderly who cannot afford housing are not a protected class for purposes of § 1985. de Botton v. Marple Twp., 689 F. Supp. 477, 482 (E.D. Pa. 1988).

11

Senior Citizen and part of a protected class." (Am. Compl. ¶ 10.) See Lake v. Arnold, 112 F.3d 682, 685 (3d Cir. 1997) ("the reach of section 1985(3) is limited to private conspiracies predicated on 'racial, or perhaps otherwise class based, invidiously discriminatory animus'") (quoting Griffin v. Breckenridge, 403 U.S. 88, 91 (1971)). To state a claim under § 1985(3) a plaintiff must plead, among other things, a conspiracy "motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons to the equal protection of the laws . . . ." Id. Accordingly, Count Fifteen must be dismissed because Plaintiff's Amended Complaint contains no facts that support a claim of conspiracy motivated by racial animus. Plaintiff generally alleges that "Willingboro, New Jersey is a predominantly African American community, therefore, making its citizens the prime targets for worst mortgage products in the form of subprime loans," and that the industry as a whole pushed "subprime mortgages" on those who do not have the ability to pay. (Am. Compl. ¶ 57.) However, generalizations or statistics about the impact that the mortgage crisis had on African-American homeowners are not sufficient to state a claim for a conspiracy motivated by racial animus under § 1985. The Amended Complaint is without facts to substantiate a claim that racial animus motivated any of the Defendants' allegedly wrongful conduct. Therefore, Count Fifteen is dismissed in its entirety.

15. For these reasons, to the extent that Plaintiff brings Count Fourteen under § 1985, Count Fourteen must be dismissed. Plaintiff fails to plead a cognizable violation of her rights motivated by racial or class-based discriminatory animus.[6] Therefore, Counts Fourteen and Fifteen are dismissed in their entirety for failing to state a claim upon which relief may be granted.

16. Count Seven and Eighteen appear to be cumulative in that they both allege "Gross Negligence" against all Defendants. Plaintiff brings Count Seven "Pursuant to Common Law" and Count Eighteen references "N.J.S.A. 62A-27c, N.J.S.A. 2A:15-5.10." The Court is not aware of any Title 62A in the New Jersey code, and N.J. Stat. Ann. § 2A:15-5.10 is a section defining terms within Article 1B, which concerns punitive damages. The Court construes these counts to allege identical torts of common-law negligence against Defendants. Therefore, the Court will dismiss Count

---

[6] The tort of malicious prosecution requires the plaintiff to show "(1) that defendants instituted the criminal action against her; (2) that defendants acted with malice; (3) that there was an absence of probable cause for the criminal action; and (4) that the criminal action terminated in her favor." Afiriyie v. Bank of Am., N.A., No. L-1987-08, 2013 WL 451895, at *16 (N.J. Super. Ct. App. Div. Feb. 7, 2013). Plaintiff does not plead facts to support such a claim. Additionally, although Plaintiff invokes the "seizure" language of the Fourth Amendment, or implies some kind of "taking" protected by the Fifth Amendment, or equivalents under state law, she does not plead a seizure or taking by a state actor. Therefore, to the extent Count Fourteen brings claims for malicious prosecution or constitutional deprivations of property, those claims are dismissed.

13

Eighteen as redundant of Count Seven.

17. Count Nineteen, alleging a violation of the New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1, et seq. ("NJCFA"), states that "[t]he loan origination conduct of the Banks, as described above, constitutes unfair or deceptive practices in violation of the consumer protection laws of New Jersey." (Am. Compl. ¶ 231.) Plaintiff asserts Count Nineteen "Against all Defendants," but only brings "Unfair and Deceptive Loan Origination Practices" (Count Twelve) against Defendants Morrice, Mortgage Electronic Registration System, Inc. ("MERS"), Bank of America, N.A., "Deutsche," and "Goldman." (See id. ¶¶ 219-220.) The Amended Complaint does not state a basis for holding other Defendants liable for fraud related to loan origination under the NJCFA. Therefore, Count Nineteen must be dismissed against all other Defendants.

18. The Court construes Plaintiff's federal RICO claims to be brought under 18 U.S.C. § 1962(c)[7] and 18 U.S.C. § 1962(d).[8] To plead a violation of § 1962(c), a plaintiff must allege: (1)

---

[7] "It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity of collection of an unlawful debt."

[8] "It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."

14

the existence of an enterprise (2) affecting interstate commerce, (3) that the defendants were employed by, or associated with, the enterprise, and (4) that the defendants "participated in the conduct of the affairs of the enterprise" (5) through "a pattern of racketeering activity consisting of at least two acts of racketeering activity." Rose v. Bartle, 871 F.2d 331, 358 (3d Cir. 1989). The plaintiff must also allege an injury under 18 U.S.C. § 1964(c). To state a claim for conspiracy under § 1962(d), "a plaintiff must allege (1) agreement to commit the predicate acts of fraud, and (2) knowledge that those acts were a part of a pattern of racketeering activity conducted in such a way as to violate section 1962(a), (b) or (c)." Rose, 871 F.2d at 366. When a civil RICO claim is based on fraud, the RICO claim must be pleaded with particularity, according to Fed. R. Civ. P. 9(b). Rule 9(b) requires a plaintiff claiming fraud to allege: "(1) A specific false representation of material facts; (2) knowledge by the person who made it of its falsity; (3) ignorance of its falsity by the person to whom it was made; (4) the intention that it should be acted upon; and (5) the plaintiff acted upon it to his [or her] damage." In re Suprema Specialties, Inc. Sec. Litig., 438 F.3d 256, 270 (3d Cir. 2006). Plaintiffs must describe "with particularity the 'circumstances' of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged and to safeguard

15

defendants against spurious charges of immoral and fraudulent behavior." <u>Seville Indus. Mach. Corp. v. Southmost Mach. Corp.</u>, 742 F.2d 786, 791 (3d Cir. 1984).

19. In sum, fraud and civil RICO claims are subject to demanding pleading standards. The fraud and RICO claims as presently pleaded are insufficient because one cannot tell what Plaintiff alleges each Defendant did to cause her injury. A plaintiff does not plead a viable claim by lining up all of the financial institutions that had nothing to do with her foreclosure and blaming them as a group. The pleadings related to fraud must place each defendant on notice of the <u>precise</u> misconduct with which he or she is charged and how that defendant's conduct harmed the plaintiff and must contain enough factual content to make such a claim plausible on its face. <u>Iqbal v. Ashcroft</u>, 556 U.S. 662, 678 (2009).

20. Plaintiff still has not complied with Rules 8(a) and 9(b) of the Federal Rules of Civil Procedure. Plaintiff's Amended Complaint and accompanying exhibits are hundreds, if not more than one thousand pages long, and the method by which Plaintiff incorporates the entirety of the Amended Complaint by reference into each individual count makes it difficult for the Court, and for potential Defendants, to identify exactly what wrongdoing has been alleged against each Defendant in a manner causing Plaintiff's financial harm. Plaintiff has not provided a "short

and plain statement" of the claim showing the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). Furthermore, it is not clear to the Court what specific conduct of each Defendant grounds liability for fraud or conspiracy. References to other investigations and lawsuits pertaining to the foreclosure industry generally do not constitute clear averments of fact that the Court can make sense of or order Defendants to answer. See Giles, 2012 WL 450629, at *18 (granting leave to re-file an amended complaint alleging civil RICO and fraud claims related to a foreclosure, stating that a confusing, 90-page complaint did not meet the requirements of Rules 8(a) and 9(b)); see also Fed. R. Civ. P. 9(b) (requiring plaintiffs to "state with particularity the circumstances constituting fraud"). Therefore, the remaining claims are dismissed without prejudice, and the Court will offer to Plaintiff a final opportunity to file a Second Amended Complaint consistent with this Opinion.

21. Any Second Amended Complaint must be consistent with this Opinion and conform with Fed. R. Civ. P. 8(a) and 9(b). Any amended complaint must include particular allegations of conduct constituting fraud for each named Defendant, as required by Fed. R. Civ. P. 9(b) and discussed above. Extraneous matter about the foreclosure crisis or mortgage industry generally should not be included in, or attached to, the Second Amended Complaint. As in every complaint filed in federal court, Plaintiff is constrained

17

to bring suit only against those parties against whom she is able to make a plausible claim that the particular party has caused the harm she has suffered; shotgun allegations against numerous parties that happen to be involved in the same business or industry are not permitted under Fed. R. Civ. P. 8(a) and 9(b). Any claims that have been dismissed with prejudice in this Opinion and Order, or the Memorandum Opinion and Order of January 28, 2013 [Docket Items 6 & 7], must not appear in the Second Amended Complaint. Failure to amend the pleadings accordingly will result in dismissal of claims with prejudice. Plaintiff will have thirty days from the entry of this Opinion and Order to file a proposed Second Amended Complaint.

  22. The Court does not suggest, by declining to dismiss with prejudice certain claims in this § 1915 screening, that these remaining claims affirmatively state a claim for relief. Nor does the Court suggest that the remaining claims cannot be subject to a motion to dismiss for failure to state a claim by one or more Defendants. The Court merely declines at this time to dismiss the remaining claims <u>sua sponte</u> in this § 1915 screening.

  23. An accompanying Order will be entered.


 April 23, 2013           **s/ Jerome B. Simandle**
Date                 JEROME B. SIMANDLE
                    Chief U.S. District Judge